Ms. Phillips, when you're ready. Thank you, Your Honor. May it please the Court. My name is Jacob Phillips, and I'm here for the plaintiff, Ms. Tracie Beard. This case concerns the Telephone Consumer Protection Act, or the TCPA, and arises from a summary judgment that was entered in favor of the defendant. And we ask that that summary judgment be reversed and remanded because the decision was a singularly outlier decision that has no justification under the text of the TCPA or its implementing regulations or any support in the case law. Without repeating the briefing, the brief facts here are that the defendant sent three pre-recorded voicemails to the plaintiff's phone, which under the TCPA they can only do, and they were telemarketing pre-recorded calls, which under the TCPA they can only do if they have prior express written consent. What happened here was that the plaintiff was trying to get the cash price of a car that she was interested in, and the website, like many of these websites, do have a specific onboarding process. As everyone's aware, if they've signed up for any websites, you know, you've got to go through, put in some information. And a lot of times they have disclosures. They have a terms of service, you have to agree to a privacy policy, usually. That's what the defendant had. Those were both hyperlinked. Now typically, if the company wants to send telemarketing messages to whoever, to the consumer who's signing up, as part of that onboarding process and to comply with the TCPA, they also have a disclosure that, hey, you've got to click this box, and if you do, we're going to send you telemarketing messages via pre-recorded voice or automated technology or what have you. Here, the defendant didn't. Instead, what they did was they put certain vague marketing language in the terms of service hyperlink that the website disclosed to Ms. Beard. Well, what's your best authority for the proposition that a hyperlink, hyperlinking terms and conditions is improper under the TCPA? Well, our best authority... Is the hyperlink the problem, and what's your authority for that? The hyperlink is the clearest problem. We think the language of the terms of service also failed to comply, but our best authority for that, Your Honor, honestly, is the text of the implementing regulation itself, which says that... You think using the hyperlink in the way they did it here, where it's right next to the I agree in terms of service, is the biggest problem, versus when you actually read the terms of service, you can't... It's not clear and conspicuous. Well, I'm perfectly fine with saying that. This is a huge problem, too. Let's put it this way. It's the first problem, right? Logically, it's the first problem because it's the first step in the process, let's say. And because the implementing regulation says that the disclosure has to be clear and conspicuous and has to be separate and apart from any other disclosures, here it's not separate and apart from the disclosure that you're agreeing to the terms of service. It's not separate and apart from the disclosure that you're agreeing to the privacy policy. There is no disclosure. It's contained within those disclosures, if that makes sense, rather than being separate and apart. I'm sorry, Your Honor. No, no, no. I wanted you to finish. I'm sorry. I thought you were finishing and then I jumped, but I wanted you to go ahead and finish. I think this is right, but I just want to get... From your perspective below and on appeal, there's been no challenge to the CFR, right? That is correct, Your Honor. The defendant did not raise that argument below. Or on appeal, we would... Because you keep making the move. I think it's the right move, given where we are. I'm not criticizing, but I just want to make sure that you're making it for the reason I think. By putting the words from the regulation interchangeably, written, for example. We don't have a written problem, right? There's nothing in the statute that requires it to be written, but the regulation does require it to be written. We could do that for quite a few other parts of it. But for purposes of this appeal, it's your position that the regulation has been unchallenged. And so we're going to evaluate each of these steps, as you describe it, based on the regulation as we have it. That's exactly right, Your Honor. It hasn't been challenged. We could have that argument, but it hasn't been raised, hasn't been briefed. And so our position would be, for purposes of this appeal, yes, the regulation has the force of law. Effectively, as an interpretation of the text of the TCPA. Are you aware of cases? You don't have to be. But are you aware of cases that have addressed whether this regulation is consistent with the prior express consent language of the TCPA? So there are many cases addressing implementing regulations of other parts of the TCPA. I got that. I'm talking about this piece. I had a feeling this might come up, and so last night I did a little bit of quick research. I know that there's three, I believe, that are all unpublished district court cases doing a Chevron analysis prior to this most recent oral argument from the Supreme Court. I'll put it that way, doing a Chevron analysis and saying that it's reasonable. But they're unpublished. They're out of circuit. Going back to the question of the separate and apart, clear and conspicuous, we would suggest that it fails at that first step because it's not separate and apart from the disclosure that you're agreeing to the terms of service. It's literally contained within the terms of service. Now, having said that. How would you do it separate and apart? You agree you can sign and do these electronically. If you didn't have hyperlinks, how could you do it where it wasn't separate and apart? That just seems like the most natural way. I'm not an internet guru by any stretch of the imagination, but that seems like the most natural way of presenting it. How would you suggest that it's just a better way of doing it in your view? If you read lots of other case logs, which claims get dismissed, how most people do it is click a box, terms of service, click a box, privacy policy, click a box. You can send me automated text messages. Enter. You know what I mean? It's its own disclosure. And you click that box, too. And it just says, by giving this information, I authorize you to send me automated and pre-recorded telemarketing messages. And it's just its own disclosure right there in the onboarding process. So that's how most people do it. That's how a defendant could have done it if they had wanted to. Separate from the hyperlinking issue, how is the telemarketing disclosure here insufficient? So getting past step one to step two, if we're actually looking at the terms of service themselves, one of the requirements of the implementing regulations is that the consumer has to actually consent specifically to receive automated or pre-recorded telemarketing messages. And this makes sense, right? Because it's not against the law for a live caller to telemarket to an individual. So what the TCPA requires is that the person has to consent to what would otherwise violate the TCPA, which is the pre-recorded telemarketing call. Here, there is nothing in the terms of service that ever reference pre-recorded telemarketing calls. What the district court relied on was what the district court pointed to as the clear and conspicuous consent was just basically we might market to you. And our affiliates might as well. It didn't even mention calls. And aren't they ordinarily bold or in different fonts or italicized or something other than buried in a bunch of words? That's exactly right, Your Honor. And so there's two issues here. One, it didn't mention the pre-recorded telemarketing messages aspect of it. And then the second was that even within the terms of service, it was not clear and conspicuous or separate and distinguishable from all of the other disclosures. It's a 21-page document that has all of this stuff about data and cookies and indemnification and liability. And here's who we'll sell your data to. And here's why Google will know exactly what ads to market to you. And buried within that is a single sentence about also we might use your phone number in marketing. But even that does not mention that it will be telemarketing via pre-recorded call messages. Is your position on that? So you seem to focus on big A, right, saying that you're either going to use an automated dialer within the regs, automated dialer or pre-recorded message? That's correct, Your Honor. The two things that you're not allowed to do. But the second piece, which is the context of it's not as a condition of purchasing, even though except hypothetically that I think there wasn't a purchase involved here, does the reg require there to be that disclosure even though there was no purchase taking place? I mean, a natural reading of it would say you've got to say that even if this doesn't have anything to do with a purchase. That's correct. Well, the only thing I would quibble with, Your Honor, is that that would actually be the third reason. One is it doesn't say pre-recorded. Second is not clear and conspicuous. Third is… Well, right, I'm just looking at A and B, right? So subsection 9 has little i. Little i is clear and conspicuous. A is pre-recorded. B is it's not in connection with purchase, right? So I was just trying to focus on A and B. I understand you've got arguments about little i and you also I think have arguments also about 9, right, the main text. I'm just trying to focus on like big A and big B. Got it. I think the natural reading of the implementing regulation is that, yeah, you've got to inform them that it's not a condition of purchase, even if they don't… Even if there's no purchase taking place. And they don't ultimately make a purchase. Right. Or if it's not… It's never going to involve… This one might have come to be a purchase. But even if it's a context in which there's no purchase was ever going to take place. Why? If I was just signing up for like a free newsletter, right, that I was never going to buy. I just was getting a free newsletter and they wanted to use my information to do that, they would need to provide this disclosure even if there never was a purchase. I mean, it would be a little bit of a nonsensical disclosure, I get. But it seems like if they didn't include it, they would have violated the regulation. I think that's correct, Your Honor, although I would point out that since we're talking about telemarketing and 99% of the case, if you're telemarketing something, it's because you're at least hoping there's going to be a purchase of a good or service. Otherwise, it wouldn't be telemarketing. No, no. But that's the telemarketing. That's what's happening after. This is a question about when you give the express approval. And the express approval doesn't have to be in connection with telemarketing, right? It's a violation if you're telemarketing in this context, though, right? On the back end, though, right? So the agreement doesn't have to do, as in this case, there was no purchase that was taking place at the time of this agreement. I get they wanted one down the road, but the agreement that's taking here is to get information like a newsletter. All right. That's fine. But there's no purchase taking place. So to say by clicking this box is not a condition of making the purchase. Well, there's no purchase. Yes, I see what you're saying. And yes, I think under the plain reading of the regulation, yeah, you've got to inform that. You still would have to make that disclosure, too. I believe so, Your Honor. Yeah, I think so. Circling back to also whether within the terms and conditions it was a sufficient disclosure, I think one thing that's worth noting is that Congress requires prior express consent. Express has to have a meaning. Express doesn't really have a meaning if what it means is, yeah, you can bury it within this 22-page document that we know people aren't really going to read and who cares. Express carries a connotation of not constructive, of not implied. We want to make sure that people are making an informed decision as to whether they want to receive telemarketing and inundating intrusive phone calls. Why is that? So I get what clear and conspicuous gets you there. I don't understand the express, though. We naturally think of express versus implied consent as being sort of terms of art. We think about those as being terms of art. And so express in that context doesn't seem like it necessarily means clear and conspicuous. I think what it does mean, though, to your point, is not implied, not constructive. Totally fair. It's not implied, not constructive. But you just seem to be suggesting that express there means clear and convincing. And I don't see why those two go together. And maybe I said it poorly, but what I meant is that it means not implied. It means not constructive. And so we have all this case law where you have arbitration provisions that are within a hyperlinked agreement. And the courts have said, yeah, you might not have had actual notice of the arbitration agreement, but that doesn't matter. We treat arbitration like any other term. Constructive notice is enough. Here, though, Congress and the implementing regulation makes clear, no, no, no, that's not enough here. We need clear and conspicuous and we need express. Constructive is not enough. Implied is not enough. We need clear and conspicuous disclosure. Now I'm rambling and repeating my briefing. So unless the court has further questions, I'll carry over the rest of my time to rebuttal. Thank you. Thank you, Mr. Phillips. Mr. Learberg. Thank you, Your Honor. May it please the court, Matt Learberg for the appellee, which is called John Hester Chevrolet, just to get the pronunciation out right out of the gate. There are two main reasons to affirm here. The first is that what John Hester Chevrolet did complied with the statute and regulations under the TCPA. And the second is that this particular plaintiff admitted in her deposition that she did expect to be contacted. She did expect to receive marketing materials from John Hester. And as a result, this plaintiff has, as a reasonable consumer, did in fact expect the very thing that the TCPA requires. I want to start with the statute, of course. The statute here says... Can you start with the question I had for your colleague? Because I just hypothetically accept that I understand your argument under the statute, and we could have an interesting discussion about that. But I understand the briefing below and the briefing before this court to not challenge the implementing regulation, which I would posit is quite a bit broader and includes quite a few requirements that are not at least obviously included in the statute. Is that right? I mean, for purposes of this appeal, we have to accept the regulation as the controlling standard, right? And that is indeed the first point I intend to make, Your Honor. There's a subtlety there, which is that you're right. Below and in the briefs, there's not an express challenge that says these regulations should be cast out as going beyond the statute. But that doesn't mean that this court shouldn't start with the statute to understand what the regulations mean. That's always the case. And what the statute says... Say that again. We start with the statute to understand what the regulation means. That's right, Your Honor. Okay, but to the extent that the regulation goes beyond the statute, we too must go beyond the statute, right? Yes, and let me explain what I mean. So what the plaintiff's case relies on is kind of a hyper-technical look through the definitions nested down to analyze and say each one of these... And I will address that momentarily, Your Honor. The issue here is that under the clear and conspicuous definition in the regulation, what it says is the term clear and conspicuous means a notice that would be apparent to the reasonable consumer, comma, separate and distinguishable from the advertising copy or other disclosures. That's a little bit of an unusual wording of the sentence. We've got the clause separate and distinguishable from the advertising copy or other disclosures. I think that's where the plaintiff mostly hangs their hat, is that you get down to that definition and we need to show separate. We need to show distinguishable. But what I think this is why the statute... Or clear and convincing. I mean, you can also just say clear and conspicuous. I'm sorry. To a reasonable consumer. And the problem here is that what Congress rendered illegal was advertising without consent, right? That's what the statute says. And I want to direct the court to something in the statute. This is 47 U.S.C. 227B2B. And, of course, every statute like this has kind of an empowering aspect where it says the agency or the commission, in this case, may prescribe regulations and rules. And what it says there is that the commission may, by rule or order, exempt from the requirements of this subsection, subject to conditions as the commission may prescribe, calls that are not made for a commercial purpose, such classes and categories of calls made for commercial purposes, as the commission determines, will not adversely affect the privacy rights that this section is intended to protect, and do not include the transmission of any unsolicited advertisement. So that is a gloss that Congress gave. And no matter what, without challenging the regulations as being ultra vires, we still have to start with the statute. And Congress is saying when you're looking at the regulations, consider whether the commission was trying to carve out from the statute exactly this case. Exactly this case. This is a case where a consumer asked a car dealership for information. And you started out by saying that she admitted in her deposition that she knew she would receive calls. What's the J.A. site for that? Sure. And the key parts of the deposition, it runs for several pages. It starts at 124 and goes to 204 in the J.A. That's kind of the meat of it. There are several places where she admits. So first, she says on J.A. page 146 that she was okay with being contacted at the contact information that she provided. She provided her cell phone number. Then she was contacted at her cell phone number. She got exactly what she asked for. This is a consumer reaching out and asking for information. When she was making the inquiry. Okay. Right. And then if you scroll down, she then says at J.A. About the car. So it was when she was making the inquiry. She's not saying here at least that she agrees to prerecorded phone calls later on. Well, and just to address that point directly, Your Honor, one of the issues when you kind of look at the case law across the country, one of the things that makes the FCC mad and makes courts mad is when you sign up for one thing and you get something totally different. Right? Even the notices that Beard cites from the FCC from 2022, one of the focuses was, you know, you sign up on a health care related website. Next thing you know, a list of 5,000 marketers you've agreed to call you about student loans. That's a problem. Right? That's what the FCC is saying. This is Mrs. Beard said, I'm interested in getting a quote on a used car. She also called the dealership and said she was interested in possibly purchasing a car. She's interacting with this business, asking for information. And then if you look, it's actually quoted in Mrs. Beard's opening brief, the text of the three voicemails she got. That is information that directly addresses what she was asking for. She was asking to trade in a car. The second message said, hey, now's a great time to trade in your car. You'll get more money. So where in the disclosure statement is it clear and conspicuous that she would be getting these prerecorded voicemails? It's clear in several places, Your Honor. Because of the, and again, I want to bring the court back, the reasonable consumer standard. That is the implementation of Congress's desire. Look to the reasonable consumer. And in this case, we have a reasonable consumer who knew she was going to be contacted. And looking at the language. Was she going to be contacted by Web Buy? Or she knew she was going to be contacted by the dealership that she was engaging with? She definitely knew she was going to be contacted by the dealership. Who made the prerecorded phone calls? Was it Web Buy? They were, Your Honor, I don't want to misstate. They were approved by the dealership. And the copy is a voice of a person at the dealership. The, who initially created it, I don't want to misstate. I don't know the exact answer to that question. I think Judge Richardson had a question. No, it just seems odd, right? I was trying to go to Judge Thacker's point. So I totally understand your sort of broad purpose. What they're trying to get at. All of those sorts of things. Those are like convincing as far as they take us. But where I run out of ground is like if I accept the regulation as the controlling standard. I have a really hard time understanding how this disclosure meets each of these requirements. And take as like maybe you want to do them in reverse order. I don't care what order you want to do them in. But like take just for example the A and B, right? I see no disclosure that they don't need to enter this agreement as a condition of purchasing any property. I don't know why that disclosure would be important. But the regulation requires it. And the same thing with respect to no reference to automatic telephone dialing systems and no reference to the prerecorded. Those three things, whatever we say about clear and convincing, like those three things seem to be missing and the regs seem to require them. Let me respond on two levels. And the first level again is that we start with the statute. We try and understand what is Congress. All right, go to the second level. Well, it's important though because I think that going through and trying to look at each word and say this is a separate requirement is not how Congress wants the courts to read the regulation. Oh, I totally think that's not what Congress wanted. But we're not looking at what Congress wanted anymore. We're now looking at what the agency wants. And the agency says the written agreement shall include a disclosure informing the person that and it lists two requirements, A and B. And it turns out A has two different things in it. So there are really three requirements, but, you know, shall include. It's like pretty clear, right? If that was the statute, we wouldn't be having much discussion about it, right? And given where we are, you didn't challenge it. It seems like that's where we're stuck. So at the second level, getting away from your first level, like how do I find those two things in the, you know, J.A. 229 through whatever it is, 31-ish or wherever we are. And I'll walk the court through it. So start at J.A. 227. That is a picture, kind of a screenshot of what the landing page looks like. And as the Lundbom court said, this is the District of Oregon, it matters whether it's cluttered or whether it's obvious to a reasonable consumer. All right. Right on that page. I'm getting you there, right? I'm trying to get to where I find the two things in A and B. Yes. So from that kind of clear splash page, there's a click through. Ms. Baird says she knows what that means. She knows what hyperlinks mean. It takes you, the first link takes you to terms of service. The terms of service, the key sentence there is on J.A. 231. By using the service, we agree that WebBuy and the dealer may use the personal contact information you provided, including your telephone number and e-mail address, to communicate with you about the service and products or services that may be of interest to you. Okay. Except for a minute that I think, counterfactually, that that is a clear and conspicuous disclosure. All right? If I accept that hypothetically, tell me where it says something about an automatic telephone dialing system or a prerecorded voice or that it is not necessary to enter as a condition of purchasing any good or service. Right. So the purchasing, I'm going to do these in order to try and keep it clear. There are several places within the three links where these issues are discussed. They're discussed in the sentence I just read. They're discussed in J.A. 231. Stop, stop, stop, stop. That's what I'm saying. That sentence, like nothing in that sentence talks about an automatic telephone dialing system. Nothing in that sentence talks about a prerecorded voice. And nothing in that sentence talks about, you know, a condition of purchase. I totally get your point. Like, that's not in the statute. Fine. But that sentence does not reference any of those things, does it? It refers to communications to the telephone number you provide. The problem here is what is the alternative? The alternative is to gob this up with every single possible way. To say we could send you a text. That's what the agency requires. We could send you a text. We could send you an MMS. We could send you an SMS. No, no, no. What it needs to say is we can contact you through an automatic telephone dialing system or an artificial prerecorded voice, period. Right. And that is included because it says we will contact you. We will communicate with your cell phone. So where does it say the rest of it? Maybe let's ask it a different way. Is there anywhere else that I would look to find those things? Well, let me answer it directly. The words, those magic words, you know, automated dialer or prerecorded. I know the words aren't there. They don't appear. I can search. But if I didn't find it in that sentence, is there anywhere else that you want me to look? That's the key sentence for the communications. It's broad. It covers all kinds of communications. So there's no other. That's it. There's nothing else in response to Judge Richardson's question. No other place we should look? No, there are several places to look. And that's because here, again, it's the reasonable consumer. What would a reasonable consumer take away from it? Where are one of those several places? JA-242. Providing your personal information is entirely optional. Later on the page. We may also share personally identifiable information with affiliates. On JA-242, right above that, when it talks about the personal information that WebBuy is going to collect, it lists name, address, email. It doesn't even list phone number there. That's right. So how is the reasonable consumer supposed to connect what you just read with prerecorded phone calls when it's talking about personal information that does not include your telephone number? Well, that says collects include among other personal information. Right. That's not clear and conspicuous. Well, part of the problem is that Ms. Beard typed in her phone number. It's one of the pieces of information she gave, and she expected to be contacted as a matter of fact. As part of her initial inquiry. Right, and she expected to. That's when she typed in her phone number. She said that she understood when she was filling out these websites that it was like giving away your firstborn. That's what she said in her deposition. She knew she was going to be contacted. Not only did she know it, she asked for it. That's why she was engaging with the website. Let me be clear. Great argument. If we just had the statute, right, like you and I would be like singing on the same sheet of music, right? The challenge you've got is that we don't have a statute, right? In fact, what we've got is a regulation that's much, much broader. And I would also point the court to the privacy notice, right? So there's three hyperlinks there. There's the terms of service, privacy policy, and privacy notice. What JA is the privacy notice? Sure. It's on 246. And just as a side point, Judge Stecker, there are these three separate hyperlinks lead to three separate documents. The way they appear in the record is that they're all smooshed together. But to be clear, that's not how it actually was. The court will have to kind of observe where each one starts. So, for example, on 246, where it says privacy notice, that's what would have been at the top of that link. That's a classic Q&A format. Who, what, when, where, why. Very consumer friendly. It's a chart. And on JA 247, there's a clear disclosure that this information is going to be used for marketing purposes. A reasonable consumer, which is the standard from Congress and from the regulations, a reasonable consumer like Ms. Speared looks at this and says, yes, this information is going to be used for marketing purposes, for our affiliates to market to you. Any reasonable person who looks at this, the reasonable consumer, comes away with the knowledge that they are going to be contacted on their phone. And in this case, contacted by a first party about the very thing that you had asked about. I mean, this is a case where the information they provided is what she asked for. This is not the dream plaintiff for expanding the scope of the TCPA. This is a plaintiff who got what she asked for. It's not someone who got a call from a marketing partner she's never heard of, spamming her with offers that had nothing to do with what she wanted. So I think where we disagree on this, where counsel disagrees is, is this a situation where you have to find some technical compliance with each and every word as though it were a separate requirement, or is what Congress and the FCC are asking you to do is to look at what a reasonable consumer would find apparent. That's what the regulation says. It's clear and conspicuous if a reasonable consumer finds it apparent. We have one example of a reasonable consumer, Ms. Speared herself. She did find it apparent. She admits, yes, I'm bound by whatever appears in those click-throughs. I know how a hyperlink works, and I'm bound by everything that's in there. In her deposition testimony, she says that I knew I was going to be contacted. Does she say that she knew she was going to be contacted by prerecorded voice? She doesn't say, one way or the other, Your Honor. Let me address the purchase issue because that is a separate question that Judge Richardson raised. On the purchase question, there are several responses, and I actually want to point the court to something that's cited in the briefs but not discussed at length. Let me give the site. It's from 2012. It's an FCC report, 27 FCC record, 1830, 1844, paragraph 33. This is the FCC explaining why it's changing the regulations on this, and it says, with respect to the purchase requirement, in addition, the written agreement must be obtained without requiring directly or indirectly that the agreement be executed as a condition of purchasing any good or service. In other words, this is not a disclosure requirement. The FCC put it in there because they want, this is what they said in their own memo, Your Honor, they wanted it to go in there. So there's agency legislative history that says, don't take our words for what our words say. And so if that's the story, I mean, that's your story, I get it, right? But it says not that, right? So there's something inconsistent in the legislative history from the words that we've got to apply. Why would I apply, you know, these different versions as compared to the words that I've actually got in the regulations? Absolutely not asking the court to elevate a memo over the regulations. It is informative because it tells you where the FCC was coming from and what they were worried about in the same way that Congress tells us where they were. No, it tells us where one staffer thought that he was coming from. Then when you get to the regulations, there is this question of a purchase. Even if we were to say it's a disclosure requirement, then we're kind of, we're back in transunion territory. We're back in the territory of the tree falling in the woods because this is not the case where there was any injury that arose from that, right? There was no purchase. This service was free. So Ms. Beard did not suffer as a direct result of any failure to make that disclosure. There's just no causal nexus. And that brings us to a bigger problem here that we raise in our briefs. Express written consent, notwithstanding the Ninth Circuit and Van Patten, that is an element of the offense, right? That's an element of the claim. It's listed as an element in paragraph 10 of the complaint. And express written consent, because that is an element, Ms. Beard simply never suffered that injury. There's no causal relation. This ends up being a case just about technical form requirements of documents she elected not to read. Just briefly tell me why you think it's an element of the offense and not an affirmative defense. Well, you start with the statute. The statute says, and I'll point the court to 227B1A3, right? Where it's listed to make any call parens other than a call made for emergency purposes or made with the prior express consent of the called party. If there were an exception, right? I mean, the classic analysis is, is it an exception? Other than, that sounds like an exception, right? The parenthetical exception, I'm sure the judge will let you answer. Don't worry. That sort of sounds, I mean, I don't actually have a strong view about whether it's an affirmative defense or an element of the offense. But it doesn't seem obvious to me that it's an element of the offense as opposed to an exception in the parenthetical. When Congress wants an element to be a defense, it's set out separately as an exception, typically. That's the classic form of an exception. This language, without express consent, appears in the actual text right there of the main provision of the statute. It's not tucked away anywhere. It's to make any call other than a call for express written purposes. And if I may just conclude, Your Honor, the reason it matters is because, again, it takes us back to this not being the right plaintiff to expand the TCPA in the Fourth Circuit. This plaintiff had consent. She did consent, and she expected to be contacted. So any sort of technical error, whether a disclosure could have been clear or could have been in a different place, it makes no difference to her. She admits she consented. Where the plaintiff's arguments lie is, yes, I consented, but I wish it had been different. I wish it had been bolded. I wish it hadn't been hyperlinked. But those are technical formal requirements. The exact thing that our Supreme Court has said is not an actual injury in fact. And with that, we ask that the decision of Judge Devereux be affirmed. Thank you. Thank you, counsel. Thank you both. Appreciate your argument. And you're going to have some more time. I hope so. I won't believe. Just two quick things. On the question of whether she knew that she was going to be receiving multiple pre-recorded calls for the next three months. Not just that she knew, but I think he argued that she got what she asked for. She didn't just know it. She asked for it. This was her testimony on page 93 of her depo, and I apologize. I wrote down the depo page number, not the JA number. I was just inquiring for a cash price on that vehicle. That's line 1 and line 8. I did not want to be solicited and harassed by car dealerships. In other words, she already knew she might want to buy that vehicle. In fact, she called the dealership. What she was afraid of was, you know, you go into a dealership sometimes and they quote you a higher price than maybe they have on the Internet. So she wanted to just get that cash price so she could go in and be prepared for the car. What she was not expecting, did not want, and did not consent to was then for the next three months to be getting pre-recorded calls from a guy saying four days until the end of the month. I've got to get every vehicle off the lot. I mean you can just see the car commercial. What if maybe hypothetically, maybe not, but take it as a hypothetical for a minute. Imagine in the deposition she said, listen, I don't like being contacted. But when I signed up for this, I expected to be contacted by pre-recorded voice call. To just use one example, right? But she listed all of those things. I expected to get pre-recorded, automatic dialed calls, not as a condition of purchase, whatever. I expected all of that. But under the statute, like they didn't give me notice. Would that be a trans-union problem? I don't know. Yes, right. It would flow from trans-union, but it would be an Article 3 problem, I think. Right. That would be the standing problem. And so your response in essence to your colleague on that point is if she had said those things, we would have a serious Article 3 problem. But where she says, I expected to get a call about this car, and she got pre-recorded calls about other stuff, that's not an Article 3 problem. On multiple occasions, exactly, about totally different cars that she was not interested in. But that's really a factual. She didn't expect a call at all. What she expected was just the cash price of the vehicle. I mean, at some level for us, that's a factual question to really decide that. We have to read the deposition and determine whether your representation, I don't mean this in a negative way, but your understanding of her testimony as one hand or your colleague's understanding of her testimony is the better way of reading it. And if his understanding broadly taken is right, there's an Article 3 problem, or at least an arguable Article 3 problem. Under your reading and understanding, there's not, and that's just a factual disagreement. There was a lot there that I would agree with. I think you agree. Yes, if she expected a pre-recorded call, wanted a pre-recorded call, got the pre-recorded call, we would have an Article 3 problem. I would point to Justice Jackson's line, different cases with different records may lead to different results. That's not what we have here. That would be my response to that. And then just very briefly, I would end by saying that the question before the Court here is not even so much whether the plaintiff is right as a matter of law, whether we win. The question here is could a jury have reasonably concluded that the notice that was given did not comply with the TCPA? We would submit that the answer to that is obviously yes, and ergo it was error to grant summary judgment in favor of the defendant. Thank you, Your Honor. All right. Thank you, Mr. Phillips. Mr. Leiberg, I appreciate your arguments. I'm going to ask the clerk to adjourn the Court sine die and then we'll come back and agree counsel. Dishonorable Court stands adjourned sine die. God save the United States and this honorable Court.
judges: Roger L. Gregory, Stephanie D. Thacker, Julius N. Richardson